IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

OCT - 8 2004

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| LUIS F. VELASCO | § | |
| | § | |
| VS. | § | Case Number: B-04-097 |
| | § | |
| AMFELS, INC. | § | |

**DEFENDANT AMFELS, INC.S' BRIEF IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

ROYSTON, RAYZOR, VICKERY
& WILLIAMS, L.L.P.

By: *Sara Barrientes*

Keith N. Uhles
Texas Bar No. 20371100
Federal Id. No. 1936
Sara Barrientes
Texas Bar No. 24040478
Federal Id. No. 37134
55 Cove Circle
Brownsville, TX   78521
(956) 542-4377
(956) 542-4370 - FAX

**ATTORNEYS FOR DEFENDANT,
AMFELS, INC.**

51839:1124873.1:100804

# **TABLE OF CONTENTS**

**Page**

I.   Statement of the Issues to be Ruled Upon by the Court........................................... 1

   A.   Longshore & Harbor Workers' Compensation Act Precludes Plaintiff's
        Claim, Due to the Fact that he was a "Borrowed Servant," Pursuant to 33
        U.S.C. § 905(b).............................................................................................. 1

   B.   Summary Judgment Standard.......................................................................... 2

II.  Summary of the Argument..................................................................................... 3

   A.   Plaintiff was a Borrowed Servant................................................................... 3

   B.   LHWCA is the Plaintiff's Sole Remedy.......................................................... 4

III. Argument and Authorities...................................................................................... 5

   A.   Background..................................................................................................... 5

      (i)    Suit Allegations....................................................................................... 5

      (ii)   Amfels, Inc.............................................................................................. 5

      (iii)  De-Val Construction, Ltd. d/b/a A.D. Welding Company.................... 6

      (iv)   Luis F. Velasco...................................................................................... 6

   B.   Doctrine of Borrowed Servant........................................................................ 7

      (i)    In Determining Whether the Borrowed Servant Doctrine is Available
             as a Defense, the Fifth Circuit Balanced Nine Factors:......................... 8

         (a)   Who has control over the employee and the work he is
               performing, beyond a mere suggestion of details or cooperation?. 9

         (b)   Whose work is being performed?................................................. 10

         (c)   Was there an agreement, understanding or meeting of the minds
               between the original and the borrowing employer?...................... 11

         (d)   Did the employee acquiesce in the new work relationship with
               the employer?.............................................................................. 11

(e)    Did the original employer terminate his relationship with the        11
employee?........................................................................................

(f)    Who furnished the tools and place for performance?....................        12

(g)    Was the new employment over a considerable length of time?....        12

(h)    Who has the right to discharge the employee?..............................        13

(i)    Who had the obligation to pay the employee?..............................        13

(ii)    Plaintiff was a Borrowed Servant        14


C.    Plaintiff is Covered by the LHWCA...........................................................        14

(i)    Situs Test        14

(ii)    Status Test        15


D.    Plaintiff's Sole Remedy is the LHWCA.........................................................        15


E.    Plaintiff's Election of the LHWCA remedy...................................................        17


F.    Summary Judgment Evidence.......................................................................        17


IV.    Conclusion and Prayer...............................................................................        18


V.    Appendix....................................................................................................        20

# TABLE OF CITATIONS

## FEDERAL CASES

## SUPREME COURT OF THE UNITED STATES

*Anderson v. Liberty Lobby,*
        477 U.S. 242 (1986).................................................................................    2

*Celotex Corp. v. Catrett,*
        477 U.S. 317 (1986).................................................................................    2

*Chesapeake & Ohio Ry. Co. v. Schwalb,*
        493 U.S. 40 (1989)...................................................................................    14

*Denton v. Yazoo & M. Valley R. Co.,*
        284 U.S. 305 (1932).................................................................................    8

*Herb's Welding, Inc. v. Gray,*
        470 U.S. 414 (1985).................................................................................    15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
        475 U.S. 574 (1986).................................................................................    3

*Morrison-Knudsen Const. v. Dir. Wkrs. Comp. Prog.,*
        461 U.S. 624 (1983).................................................................................    16

## UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

*Billizon v. Conoco, Inc.,*
        993 F.2d 104 (5th Cir. 1993)...................................................................    7, 8

*Brown v. Union Oil Co. of California,*
        984 F.2d 674 (5th Cir. 1993)...................................................................    12,13,14

*Capps v. N.L. Baroid - NL Industries, Inc.,*
        784 F.2d 615 (5th Cir. 1986)...................................................................    13

*Fontenot v. AWI, Inc.,*
        923 F.2d 1127 (5th Cir. 1991).................................................................    16

*Gaudet v. Exxon Corp.,*
        562 F.2d 351 (5th Cir. 1977)...................................................................    9

*Hetzel v. Bethlehem Steel Corp.,*
        50 F.3d 360 (5th Cir. 1996).....................................................................    16, 17

*Latimer v. Smithkline & French Lab,*
    919 F.2d 301 (5th Cir. 1990)................................................................ 2

*Little v. Liquid Air Corp.,*
    37 F.3d 1069 (5th Cir. 1994)................................................................ 2

*Perron v. Bell Maintenance & Fabricators, Inc.,*
    970 F.2d 1409 (5th Cir. 1992)............................................................... 7

*Melancon v. AMOCO Production Co.,*             8,9,12,
    834 F.2d 1238 (5th Cir. 1988)............................................................... 13,14

*Richter v. Merchants Fast Motor Lines, Inc.,*
    83 F.3d 96 (5th Cir. 1996).................................................................... 3


**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF TEXAS**

*Tiemeyer v. Quality Publ., Inc.,*                          2, 3
    144 F. Supp.2d 727 (S.D. Tex. 2001)..................................................


**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF LOUSIANA**

*Champagne v. Penrod Drilling Co.,* 341 F.Supp. 1282 (W.D. La. 1971),
*aff'd. per curiam*; 459 F.2d 1042 (5th Cir. 1972) *cert. den'd*, 409 U.S. 1113
(1973)................................................................................................ 13


**FEDERAL STATUTES**

33 U.S.C. § 901, *et. seq.*................................................................... 2, 4, 15

33 U.S.C. § 902............................................................................... 15

33 U.S.C. § 902(3)........................................................................... 15

33 U.S.C. § 902(4)........................................................................... 14

33 U.S.C. § 903(a)........................................................................... 14

33 U.S.C. § 905(a)........................................................................... 7, 16

33 U.S.C. § 905(b)........................................................................... 1

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

The Plaintiff has brought this case as a maritime, personal injury suit. Defendant, Amfels, Inc., denies that the cause of action asserted by the Plaintiff is available to him, as he is a borrowed servant harbor worker, and his exclusive remedy is pursuant to the statutory scheme of the Longshore & Harbor Worker's Compensation Act.

This Motion for Summary Judgment and Supporting Brief is filed early in the proceeding, as the summary judgment evidence establishes that Defendant, Amfels, Inc., is entitled to Summary Judgment as a matter of law.

United States District Court
Southern District of Texas
FILED

OCT 0 8 2004

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

LUIS F. VELASCO                          §
                                         §
VS.                                      §        Case Number: B-04-097
                                         §
AMFELS, INC.                             §

## DEFENDANT, AMFELS, INC.'S
## BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant, **AMFELS, INC.** ("Amfels") and submits this Brief in Support

of its Motion for Summary Judgment pursuant to the Federal Rule of Civil Procedure 56 and would

show more fully as follows:

### I.

### STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT

A.    **Longshore & Harbor Workers' Compensation Act Precludes Plaintiff's Claim, Due to
      the fact that he was a "Borrowed Servant," Pursuant to 33 U.S.C. § 905(b)**

At the time of Luis F. Velasco's ("Plaintiff") alleged injury, he was employed by De-Val

Construction, Ltd. d/b/a A.D. Welding Company ("A.D. Welding Company"), an employee-leasing

company which provides leased-labor employees to Amfels. Pursuant to a Leased Labor

Agreement, Plaintiff was working for the sole benefit of Amfels and was under the control of

Amfels. *See Exhibit "A," Affidavit of Sergio Cavazos, ¶ 1, and Exhibit "A1," the Leased Labor*

*Agreement, pp. 4-5. Both Exhibits are attached hereto and incorporated herein fully by reference.*

Amfels is in the business of building and repairing vessels, is located adjacent to navigable

waters of the Brownsville Ship Channel, and maintains an insurance policy pursuant to the

Longshore & Harbor Workers' Compensation Act ("LHWCA"). Plaintiff was a "borrowed servant" of Amfels and meets both the situs and status tests. Thus, Plaintiff's exclusive remedy against Amfels is for compensation benefits within the statutory scheme of the Longshore & Harbor Workers' Compensation Act ("LHWCA"). *33 U.S.C. § 901, et seq.*

## B.   Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material facts exists and that, as a matter of law, the movant is entitled to judgment. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994); *Tiemeyer v. Quality Publ., Inc.*, 144 F. Supp.2d 727, 731 (S.D. Tex. 2001). "The substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Tiemeyer*, 144 F. Supp.2d at 731. Only disputes about material facts will preclude the granting of summary judgment. *Anderson*, 477 U.S. at 248; *Tiemeyer*, 144 F. Supp.2d at 731-32.

In a motion for summary judgment, the burden is on the movant. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990); *Tiemeyer*, 144 F. Supp.2d at 732. If the nonmovant bears the burden of proof at trial, however, the movant for summary judgment need not support the motion with evidence negating the opponent's case. *Tiemeyer*, 144 F. Supp.2d at 732. Instead, the movant may satisfy its burden by showing that there is an absence of evidence to support the nonmovant's case. *Little*, 37 F.3d at 1075; *Tiemeyer*, 144 F. Supp.2d at 732.

Once the movant makes this showing, the burden shifts to the nonmovant to show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)); *Tiemeyer*, 144 F. Supp.2d at 732. "This burden is not satisfied with 'some

metaphysical doubt as to the material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Tiemeyer*, 144 F. Supp.2d at 732 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Rather, the nonmoving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting FED. R. CIV. P. 56(e)); *Tiemeyer*, 144 F. Supp.2d at 732. In determining whether a genuine issue for trial exists, the court must view all of the evidence in the light most favorable to the nonmovant. *Richter v. Merchants Fast Motor Lines, Inc.*, 83 F.3d 96, 98 (5th Cir. 1996); *Tiemeyer*, 144 F. Supp.2d at 732.

Defendant, Amfels, Inc. is entitled to summary judgment on Plaintiff's cause of action because it has conclusively shown to the Court that Plaintiff was a *"borrowed servant"* of Amfels on the date of the accident, Amfels had coverage under the LHWCA, and the LWWCA applies to the Plaintiff's claim for injuries which were sustained in the course of his employment at Amfels. Therefore, LHWCA is Plaintiff's exclusive and sole remedy and the Defendant is entitled to summary judgment as a matter of law.

## II.

## SUMMARY OF THE ARGUMENT

### A.    Plaintiff was a Borrowed Servant

At the time of the accident, Plaintiff was technically employed by A.D. Welding Company, but was clearly a "borrowed servant" of Amfels. The contract between A.D. Welding Company and Amfels provides that Plaintiff will be a *"borrowed servant"* of Amfels. *See Exhibit "A," Affidavit of Sergio Cavazos, ¶ 1 and Exhibit "A2," A. D. Welding Company Work Assignment Agreement, attached hereto and incorporated herein fully by reference.*

The Plaintiff executed a Work Assignment Agreement on September 17, 2003 (in both English and Spanish), wherein he acknowledged that he was a "borrowed servant" of Amfels, and agreed to accept as his sole remedy workers' compensation benefits for any injury incurred while working at Amfels. *See Exhibit "A2," A.D. Welding Company Work Assignment Agreement.* Further, in practice Plaintiff was treated by Amfels in all relevant respects the same as Amfels employees. *See Exhibit A, Affidavit of Sergio Cavazos, ¶ 6.*

Plaintiff was a "borrowed servant;" thus, his sole remedy is pursuant to § 905 of the Longshore & Harbor Workers' Compensation Act (LHWCA).

**B.    LHWCA is the Plaintiff's Sole Remedy**

Plaintiff's sole remedy against Amfels is that of the statutory scheme of the LHWCA. Plaintiff meets the situs and status test of the LHWCA  At the time of Plaintiff's accident, Amfels and A.D. Welding Company were subscribers to  the Longshore & Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §901 *et seq.* and maintained a  Longshore & Harbor Workers' Compensation insurance policy. *See Exhibit "A," Affidavit of Sergio Cavazos, ¶ 2.*  Plaintiff applied for the LHWCA workers' compensation benefits on May 19, 2004. *See Exhibit "B2," Plaintiff's claim for compensation, U.S. Department of Labor form LS-203.*

Plaintiff's sole remedy against Amfels is that of the statutory scheme for compensation benefits of the LHWCA, and Plaintiff's claim against Amfels must be dismissed as a matter of law.

## III.

## ARGUMENT AND AUTHORITIES

**A.    Background**

     **(i)    Suit Allegations**

In Plaintiff's Original Complaint, which was filed on or about June 16, 2004, Plaintiff alleges only a cause of action for negligence against Amfels, asserting that Plaintiff's injuries occurred on or about February 7, 2004 while performing his duties for A.D. Welding Company at Amfels' Shipyard, which is adjacent to navigable waters in the Brownsville Ship Channel. *See Exhibit "C," Plaintiff's Original Complaint, attached hereto and incorporated fully by reference.*

     **(ii)    Amfels, Inc. ("Amfels")**

In practice, Amfels builds and repairs vessels, using, in part, leased-labor employees provided by A.D. Welding Company. *See Exhibit "A1," Leased Labor Agreement.* Amfels treats leased-labor employees the same as it treats its own employees in all operational respects. *See Exhibit "A," Affidavit of Sergio Cavazos, ¶ 6.* Supervisors at Amfels are Amfels employees; supervisors are not leased. *See Exhibit "A," Affidavit of Sergio Cavazos, ¶ 4.* At all times, Amfels' supervisors directed and controlled the nature of the work which the leased-labor employees performed. *See Exhibit "A," Affidavit of Sergio Cavazos, ¶ 6.* At all times relevant to the incident which occurred to form the basis of this lawsuit, Amfels maintained LHWCA insurance coverage. *See Exhibit "A," Affidavit of Sergio Cavazos, ¶ 2.*

  (iii)    **De-Val Construction, Ltd. d/b/a A.D. Welding Company ("A.D. Welding Company")**

A. D. Welding Company is an employee leasing company that leases employees to Amfels. *See Exhibit "A1," Leased Labor Agreement.* Pursuant to a contract between Amfels and A.D. Welding Company, the leased-labor employees that are leased are laborers, not supervisors. *See Exhibit "A1," Leased Labor Agreement, p.1.* The supervisors are employed by Amfels. *See Exhibit "A," Affidavit of Sergio Cavazos,* ¶ *4.* A.D. Welding Company does not supervise or control any of the employees it leases to Amfels. *See Exhibit "A," Affidavit of Sergio Cavazos,* ¶ *5.* Amfels and A.D. Welding Company operate pursuant to the contract to which both are signators. *See Exhibit "A1," Leased Labor Agreement.* The contract provides that employees leased to Amfels are *"borrowed servants"* of Amfels. *See Exhibit "A1," Leased Labor Agreement, p. 5.* Further, A.D. Welding Company is required to and does provide LHWCA coverage for employees that work at Amfels. *See Exhibit "A1," Leased Labor Agreement, p. 3.*


  (iv)    **Luis F. Velasco ("Plaintiff")**

Plaintiff was employed by A.D. Welding Company and was leased to Amfels as a leased-labor employee. *See Exhibit "A2," A.D. Welding Company Work Assignment Agreement.* Plaintiff was fully aware of the work assignment agreement, which he signed and acknowledged. *Id.* The only work performed by Plaintiff for A.D. Welding Company was at Amfels Shipyard for the sole benefit of Amfels. *See Exhibit "A," Affidavit of Sergio Cavazos,* ¶ *7.* Plaintiff's position at Amfels was an electrician's helper, whose function related to building and repairing vessels, a maritime

related activity. *See Exhibit "A," Affidavit of Sergio Cavazos, ¶ 8.* Plaintiff's supervisors at all times were Amfels employees. *See Exhibit "A," Affidavit of Sergio Cavazos, ¶ 4.* While employed at A.D. Welding Company, Plaintiff only worked at the Amfels ship yard and was under the control of Amfels. *See Exhibit "A1," Leased Labor Agreement, pp. 4-5.* The Plaintiff, while performing work for Amfels, was fully covered by the LHWCA, and he acknowledged such when he applied for and received benefits pursuant to the LHWCA. *See "B2," U.S. Department of Labor Form LS-203.*

## B.    Doctrine of Borrowed Servant

It is anticipated that Plaintiff may deny he was a borrowed employee of Amfels, and instead assert he was actually an employee of A.D. Welding Company, thereby precluding Amfels' tort immunity under the LHWCA. However, any such argument is without merit and fails, as the summary judgment evidence conclusively establishes that Plaintiff was a *"borrowed servant"* of Amfels on the date of the alleged accident. The question of borrowed employee status is a question of law for the district court to determine. *Billizon v. Conoco, Inc.*, 993 F.2d 104, 105 (5th Cir. 1993).

The term "employer" in 33 U.S.C. § 905(a) has been interpreted to encompass both general employers and employers who "borrow" a servant from a general employer, and statutory LHWCA benefits are the exclusive remedies against both the general and the borrowing employer. *See, e.g., Perron v. Bell Maintenance & Fabricators, Inc.*, 970 F.2d 1409 (5th Cir. 1992). Amfels is an "employer" as it borrowed Plaintiff from A.D. Welding Company.

The United States Supreme Court has stated the definition of a borrowed servant:

When one person puts his servant at the disposal and under the control of

> another for the performance of a particular service to the latter, the servant,
> in respect of his acts in that service, is to be dealt with as the servant of the
> latter and not the former.

*Denton v. Yazoo & M. Valley R. Co.,* 284 U.S. 305 (1932).

A.D. Welding Company put Plaintiff, a leased-labor employee at the disposal and under the control of Amfels for the performance of Amfels' labor. *See Exhibit "A2," A.D. Welding Company Work Assignment Agreement.* As such, the Plaintiff is to be treated as a servant of Amfels; thus, Amfels enjoys tort immunity under the LHWCA and worker's compensation payments under the LHWCA are Plaintiff's sole and exclusive remedy against Amfels. *See Billizon,* 993 F.2d 104; *Melancon v. AMOCO Production Co.,* 834 F.2d 1238 (5th Cir. 1988)(where an employee is a "borrowed employee" of a company covered by the LHWCA, and covered by worker's compensation under the Act, the employee's exclusive remedy against the borrowing employer is worker's compensation and all common law tort actions are barred).

**(i)    In determining whether the borrowed servant doctrine is available as a defense, the Fifth Circuit balanced nine factors:**

(a)    Who has control over the employee and the work he is performing, beyond a mere suggestion of details or cooperation?

(b)    Whose work is being performed?

(c)    Was there an agreement, understanding or meeting of the minds between the original and the borrowing employer?

(d)    Did the employee acquiesce in the new work relationship with the employer?

(e)    Did the original employer terminate his relationship with the employee?

(f)    Who furnished the tools and place for performance?

    (g)    Was the new employment over a considerable length of time?

    (h)    Who had the right to discharge the employee?

    (i)    Who had the obligation to pay the employee?

*Gaudet v. Exxon Corp.*, 562 F.2d 351, 355 (5th Cir. 1977).

The balancing test may be used in the current case:

**(a)    Who has control over the employee and the work he is performing, beyond a mere suggestion of details or cooperation?**

This question is the central issue of borrowed employee status in the Fifth Circuit. *Melancon,* 834 F.2d at 1245. In the instant case, Amfels clearly had control over Plaintiff in his day-to-day work operations. Plaintiff took only work orders from Amfels personnel, in particular, his supervisors, Guillermo Gomez and Ruben Santos. *See Exhibit "A," Affidavit of Sergio Cavazos,* *¶ 4.* Mr. Gomez and Mr. Santos told Plaintiff what work to do and directed him to where he was to work at the Amfels ship yard on a daily basis. *Id.* Plaintiff was given no instructions by A.D. Welding Company personnel, other than to report to the Amfels' ship yard where he would be working. *See Exhibit "A," Affidavit of Sergio Cavazos,¶¶ 4 and 5.*

Plaintiff also signed an A.D. Welding Company Work Assignment Agreement (in both English and Spanish), which gave Amfels complete control over his job assignments and required that any work he performed be subject to Amfels' approval; and most importantly, noted that he agreed to be a borrowed servant of Amfels. In particular, see Exhibit "A2," the A.D. Welding Company Work Assignment Agreement, executed on September 17, 2003 by Plaintiff, which provides in pertinent part as follows:

## "A.D. WELDING COMPANY WORK ASSIGNMENT AGREEMENT

I,    Luis Velasco    hereby agree to be assigned to work at Amfels, Inc. including but not limited to its safety rules and regulations and its substance abuse policies.

I understand that I will be under the control and direction of Amfels, Inc. I understand that my job assignments will be given to me by Amfels, Inc. its employees or agents and that any work I perform is subject to Amfels, Inc. approval.

I fu[r]ther understand that during my assignment to Amfels, Inc. I will be a borrowed servant of Amfels, Inc. and that Amfels, Inc. will be my borrowing employer for the purpose of both the Texas Worker's Compensation Act and the Longshore and Harbor Worker's Compensation Act and any other maritime laws, including but not limited to the Jones Act. I further understand my sole remedy in the event I am injured while working at Amfels, Inc. will be my worker's compensation benefits.

I fu[r]ther understand that by me agreeing to be a borrowed servant of Amfels, Inc. and by me agreeing to accept as my sole remedy worker's compensation benefits in the event I am injured while working at Amfels, Inc. I am waiving any and all common law statutory causes of action that I may have against Amfels, Inc. for any injury or accident that I could sustain while performing work for Amfels, Inc.

| | |
|---|---|
| /s/ Luis Velasco | 9-17-03 |
| Signature of Employee | Date" |

See Exhibit "A2," the A. D. Welding Company Work Assignment Agreement.

Similarly, pursuant to the Leased Labor Agreement, Amfels had the right to supervise all the personnel in the work being performed and Amfels controlled the details of the work being performed and the manner in which the work would be performed. See Exhibit "A1," Leased Labor Agreement, p. 4.

**(b)     Whose work is being performed?**

There is no question that Plaintiff was engaged in Amfels' work. The work was being

performed for the sole benefit of Amfels. *See Exhibit "A1," Leased Labor Agreement, p. 4. and Exhibit "A," Affidavit of Sergio Cavazos, ¶ 7.* All of the leased-labor employees at the Amfels Shipyard were working for the benefit of Amfels. *Id.* Further, all of the leased-labor employees were required to perform under Amfels standards. *Id.* All work performed was to be for the benefit of Amfels, and all work was to be performed at the Amfels Shipyard, located adjacent to the Brownsville Ship Channel at the Port of Brownsville, Texas. *See Exhibit "A1," Leased Labor Agreement, p.* 4 and Exhibit "A," Affidavit of Sergio Cavazos, Affidavit, ¶¶ 7 and 9.

      (c)    **Was there an agreement, understanding or meeting of the minds between the original and the borrowing employer?**

Whether there was an agreement, understanding or meeting of the minds between A.D. Welding Company, the original employer and Amfels, the borrowing employer, is a clear cut question. As previously established, A.D. Welding Company entered into a contract agreeing that Plaintiff would be a borrowed employee of Amfels. *See Exhibit "A1," Leased Labor Agreement.*

      (d)    **Did the employee acquiesce in the new work relationship with the employer?**

Plaintiff clearly acquiesced in the work situation at Amfels by signing the Work Assignment Agreement. *See Exhibit "A2," A. D. Welding Work Assignment Agreement.* In fact, Plaintiff performed work for Amfels under the supervision and direction of Amfels' employees and supervisors. *See Exhibit "A," Affidavit of Sergio Cavazos, ¶ 4.*

      (e)    **Did the original employer terminate his relationship with the employee?**

The original employer, A.D. Welding Company, did not completely terminate its relationship with Plaintiff after his arrival at the Amfels Shipyard; however, A. D. Welding Company exerted no

control over Plaintiff while he was working at Amfels. *See Exhibit "A," affidavit of Sergio Cavazos,*

*¶ 5.* Rather, Plaintiff worked at the direction of Amfels. *Id. and Exhibit "A1," Leased Labor*

*Agreement, pp. 4-5.* The case law in the Fifth Circuit is clear that this factor does not require that

a lending employer completely sever its relations with the employee. See *Melancon,* 834 F.2d at

1246.


**(f)      Who furnished the tools and place for performance?**

All heavy tools, such as grinders, drills, and electrical tools, which were required for work

at Amfels Shipyard were supplied by Amfels, except for those hand tools usually furnished by semi-

skilled or skilled personnel. *See Exhibit "A," Affidavit of Sergio Cavazos, ¶ 9 and Exhibit "A1,"*

*Leased Labor Agreement, p. 5.* Amfels also provided personal protective wear and safety materials.

*See Exhibit "A," Affidavit of Sergio Cavazos, ¶ 9.* The place for performance was the Amfels

Shipyard. *Id.*


**(g)      Was the new employment over a considerable length of time?**

According to Amfels' records, at the time of the accident, Plaintiff had been working at the

Amfels' shipyard for approximately six months. *See Exhibit "A," affidavit of Sergio Cavazos, ¶ 10.*

This can be considered a great length of time. In *Brown v. Union Oil Co. of California,* 984 F.2d

674 (5th Cir. 1993), the Plaintiff Brown was found to be a borrowed employee where he had only

worked for the borrowing employer for one month prior to his accident. The Court noted that,

> Where the length of employment is considerable, this factor supports a finding that the
> employee is a borrowed employee. However, the converse is not true.

*Brown*, at 679, quoting *Capps v. N.L. Baroid - NL Industries, Inc.*, 784 F.2d 615, 618 (5th Cir. 1986).

The *Capps* court also noted that the Fifth Circuit had previously affirmed a finding of borrowed

employee status where the employee's injury occurred on the first day of the job. *Champagne v.*

*Penrod Drilling Co.*, 341 F.Supp. 1282, 1284 (W.D. La. 1971), *aff'd. per curiam*; 459 F.2d 1042 (5th

Cir. 1972) *cert. den'd*, 409 U.S. 1113 (1973).


**(h)     Who had the right to discharge the employee?**

While Amfels did not have the right to terminate Plaintiff's employment with A. D. Welding

Company, it had the right and did in fact terminate the Plaintiff's work relationship with Amfels

when he failed to report back to work at Amfels. *See Exhibit "A," affidavit of Sergio Cavazos, ¶11.*

His termination from Amfels was effective on April 5, 2004, due to the fact that Plaintiff never

returned to work after an unexcused absence on March 22, 2004, and Amfels had not heard from him

since March 23, 2004. *See Exhibit "A," affidavit of Sergio Cavazos, ¶ 11.* See *Melancon* 834 F.2d

at 1246 and *Brown*, 984 F.2d at 679.


**(i)     Who had the obligation to pay the employee?**

Pursuant to the Leased Labor Agreement, Amfels remitted payment of the gross payroll and

a fee to the employee-leasing company, A.D. Welding Company, with which A.D. Welding

Company then used to pay Plaintiff. *See Exhibit "A," Affidavit of Sergio Cavazos, ¶ 12 and Exhibit*

*"A1," Leased Labor Agreement, p. 2.* The amount was based on Amfels' time cards which Plaintiff

used on a daily basis. *See Exhibit "A," Affidavit of Sergio Cavazos, ¶ 12.*

It has been conclusively shown that where the borrowing employer furnished the funds from which the employee was paid, this procedure supports employee status. See *Brown*, 984 F.2d at 678 and *Melancon*, 834 F.2d at 1246.

### (ii)    Plaintiff was a Borrowed Servant

The summary judgment evidence establishes that Plaintiff was a borrowed servant by nature of his employment, by contract, pursuant to a work assignment agreement, all pursuant to the Fifth Circuit balancing test.

### C.    Plaintiff is Covered by the LHWCA

To be covered under the LHWCA, an employee must meet both the situs and status requirements imposed by the 1972 amendments to the Act. *Chesapeake & Ohio Ry. Co. v. Schwalb*, 493 U.S. 40 (1989). Plaintiff is an employee who meets both the situs and the status requirements.

### (i)    Situs Test

Coverage under the LHWCA extends to employers whose employees are employed in "maritime employment" in whole or in part upon navigable waters of the United States, including adjoining piers, wharves, drydocks, terminals, building ways, "or other adjoining area customarily used by an employer in loading, unloading, repairing or building a vessel." 33 U.S.C. § 903(a) (1982 ed., Supp. V); 33 U.S.C. § 902(4), *Chesapeake & Ohio Ry. Co. v. Schwalb*, 493 U.S. at 45.

As noted previously, Amfels is located next to the Brownsville Ship Channel, a navigable water of the United States. *See Exhibit "A," Affidavit of Sergio Cavazos, ¶ 9.* Plaintiff thus meets the situs requirement.

### (ii)    Status Test

The LHWCA applies only to employees engaged in "maritime employment" or in part on navigable waters.  33 U.S.C. § 902.  Section 902(3) specifically includes the term "maritime employment" any person who is engaged in Longshore operations, any harbor worker including ship repairman, ship builder and ship breaker, and lists a number of excluded employments, but otherwise is vague as to what constitutes "maritime employment."

If the worker was not on navigable waters at the time of his injury, the test for such a worker under the LHWCA is whether he was engaged in an integral part of a maritime activity, such as the process of loading, unloading, repairing, building or breaking a ship.  *See e.g. Herb's Welding, Inc. v. Gray*, 470 U.S. 414 (1985).  It is undisputed that Amfels is a ship yard, adjacent to the Brownsville Ship Channel (See Exhibit "A," Affidavit of Sergio Cavazos, ¶ 9), and is a company which builds and repairs vessels.  The Plaintiff thus meets the status requirement.

The Plaintiff has met both the situs and the status requirements, thus Plaintiff is an employee covered by the LHWCA.

### D.    Plaintiff's Sole Remedy is the LHWCA

At the time of Plaintiff's alleged accident, Amfels was a subscriber under the Longshore & Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §901 *et seq.,* and maintained a Longshore & Harbor Workers' Compensation insurance policy.  *See Exhibit "A," Affidavit of Sergio Cavazos, ¶ 2.*  Since Amfels has shown that Plaintiff meets both the situs and the status tests, and that Amfels subscribed to the LHWCA, the Plaintiff's sole remedy is that of the LHWCA statutory scheme.

The specific language of the LHWCA, which bars an action by a Plaintiff such as this one, is as follows:

> A liability of an employer [for compensation benefits under the LHWCA] shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin and anyone otherwise entitled to recover damages from such employer, at law or in admiralty on account of such injury or death...

*33 U.S.C. §905(a)*. Congress explicitly intended for the LHWCA to be the exclusive remedy for covered workers. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360 (5th Cir. 1995). The LHWCA allows employers the ability to relinquish their defenses to tort actions in exchange for limited and predictable liability. *Morrison-Knudsen Const. v. Dir., Wkrs. Comp. Prog.*, 461 U.S. 624, 636, (1983). In exchange, employees receive prompt relief without the expense, uncertainty and delay that a tort action entails. *Id.* at 635. The LHWCA replaces a negligence action with an administrative scheme for determining an employee's right to an amount of compensation for an injury sustained on the job. *Fontenot v. AWI, Inc.*, 923 F.2d 1127, 1132 (5th Cir. 1991).

The LHWCA was enacted with the congressional intent that it be the sole and exclusive remedy for workers within its scope and not just a stepping stone on the way to a jury award. *Fontenot,* 923 F.2d at 1132. Permitting a trial court to redetermine issues decided by the administrative system effectively defeats the purpose of the LHWCA. *Id.* Further, once an employee elects the LHWCA remedy, he is bound by the provisions of the Act. *Hetzel,* 50 F.3d at 367. Plaintiff reported the alleged injury to the United States Department of Labor on May 19, 2004 and requested a finding that he be eligible for coverage under the LHWCA. *See Exhibit "B," Affidavit*

*of Alfredo De La Fuente, and Exhibits "B1," "B2," and "B3," U.S. Department of Labor forms LS-202, LS-203, and LS-215a, respectively.*

There is no dispute that Plaintiff is a covered worker under the LHWCA. *See Exhibits "B1," "B2," and "B3."* Consequently, the LHWCA benefits are the exclusive remedy available to the Plaintiff and Plaintiff is not entitled to any other recovery. Therefore, the Plaintiff's claims against Amfels should be dismissed.

### E.    Plaintiff's Election of the LHWCA Remedy

It is undisputed that the Plaintiff has elected an LHWCA remedy by applying for LHWCA benefits. *See Exhibits "B1," "B2," and "B3."* Since Plaintiff has elected the LHWCA remedy, he is not allowed to seek a double recovery for the same injury. *Hetzel,* 50 F.3d 360 at 367.

### F.    Summary Judgment Evidence

Defendant incorporates herein by reference, as if set out fully at length herein and rely upon the following evidence to support its motion for summary judgment:

1.    Affidavit of Sergio Cavazos, attached hereto and marked as Exhibit "A;"

2.    Leased Labor Agreement, attached hereto and marked as Exhibit "A1;"

3.    A.D. Welding Company Work Assignment Agreement, attached hereto and marked as Exhibit "A2;"

5.    Affidavit of Alfredo De La Fuente, attached hereto and marked as Exhibit "B;"

6.    U.S. Department of Labor Form LS- 202, attached hereto and marked as Exhibit "B1;"

7.    U.S. Department of Labor Form LS-203, attached hereto and marked as Exhibit "B2;"

8.    U.S. Department of Labor Letter, form LS-215a, attached hereto and marked as Exhibit "B3;"

9.    Plaintiff's Original Complaint, attached hereto and marked as Exhibit "C."

## IV.

## CONCLUSION AND PRAYER

Defendant, Amfels, Inc. is entitled to summary judgment on Plaintiff's cause of action because it has conclusively shown to the Court that Plaintiff was a *"borrowed servant"* of Amfels, Inc. on the date of the accident, Amfels had LHWCA insurance coverage, Plaintiff falls within the covered group of employees under the LHWCA, and Plaintiff has applied for and been approved for compensation payments under the LHWCA for injuries sustained in the course of his employment at Amfels. Therefore, the LHWCA is Plaintiff's exclusive and sole remedy and the Defendant is entitled to summary judgment as a matter of law.

Defendant, **Amfels, Inc.** has demonstrated, as a matter of law, to this Court that the Plaintiff is precluded from the award of any damages from this Defendant, pursuant to 33 U.S.C. § 905, the Longshore & Harbor Workers' Compensation Act. Thus, the Defendant requests that the Plaintiff's claim for negligence fails as a matter of law, that the Court enter judgment for Defendant, and that the Court dismiss Plaintiff's claim with prejudice.

Respectfully submitted,


By: *Sara Barrientes*

Keith N. Uhles

Texas Bar No. 20371100

Federal Id. No. 1936

Sara Barrientes

Texas Bar No. 24040478

Federal Id. No. 37134

**ATTORNEYS FOR DEFENDANT,
AMFELS, INC.**


OF COUNSEL:


ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

55 Cove Circle

Brownsville, TX  78521

(956) 542-4377

(956) 542-4370 - FAX

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

LUIS F. VELASCO                          §
                                         §
VS.                                      §        Case Number: B-04-097
                                         §
AMFELS, INC.                             §

**APPENDIX TO DEFENDANT, AMFELS, INC.'S
MOTION FOR SUMMARY JUDGMENT**

**EXHIBIT**                                              **EVIDENCE**

**A** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Affidavit of Sergio Cavazos

A-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Leased Labor Agreement

A-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . A.D. Welding Company Work Assignment Agreement

**B** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Affidavit of Alfredo De La Fuente

B-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . Employer's First Report of Injury or Occupational Illness
(U.S. Department of Labor Form LS-202)

B-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Employee's Claim for Compensation
(U.S. Department of Labor Form LS-203)

B-3 . . . . . . . . . . . . . . . . . . Notice to Employer and Insurance Carrier that Claim Has Been Filed
(U.S. Department of Labor Form LS-215a)

**C** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Plaintiff's Original Complaint