UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
–BROWNSVILLE DIVISION–

United States District Court
Southern District of Texas
ENTERED

APR 1 5 2005

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| LUIS F. VELASCO, | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-04-097 |
| | § | |
| AMFELS, INC., | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Luis Velasco sued Amfels, Inc. to recover damages for injuries he suffered on or about February 7, 2004, while working at the Amfels Shipyard in Brownsville, Texas. At the time of his accident, Velasco was employed by De-Val Construction, Ltd. d/b/a A.D. Welding Company ("A.D. Welding"), an employee-leasing company which provides leased-labor employees to Amfels. A.D. Welding had assigned Velasco to work for Amfels as an electrician's helper pursuant to a leased labor agreement between A.D. Welding and Amfels. Prior to beginning his stint at the Amfels shipyard, Plaintiff signed a work assignment agreement in both English and Spanish acknowledging that he is a borrowed servant of Amfels. Amfels has filed a Motion for Summary Judgment (Docket No. 12) claiming that Velasco is a borrowed servant and is, therefore, covered by the Longshore & Harbor Workers' Compensation Act ("LHWCA"), which would bar this lawsuit. 33 U.S.C.A. § 901, *et seq*. For the reasons stated below, Defendant's Motion for Summary Judgment is hereby **GRANTED**.

**I.   STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment evidence is viewed in the light most favorable to the non-movant. *Poller v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464, 473 (1962). The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the moving party meets its burden, the nonmoving party "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

## II. DISCUSSION

### A. The Arguments of the Parties

Plaintiff filed this lawsuit against Amfels as a third-party general maritime negligence claim under Rule 9(h). Defendant's answer raised a "borrowed servant" defense and it has moved for summary judgment arguing that, as a borrowed servant of Amfels, Plaintiff's sole remedy against Amfels is for compensation benefits within the statutory scheme of the LHWCA. 33 U.S.C.A. § 901, *et seq*. Workers' compensation under the LHWCA is the exclusive remedy for an employee against his employer because the Act bars all common law tort actions against the employer. If Plaintiff was Amfels' "borrowed employee," Amfels was his employer for purposes of the Act.

Plaintiff argues that he was not a borrowed servant of Amfels because he was rushed to fill out and sign paperwork he did not understand and, therefore, did not consent to the

arrangement. *Docket No. 15*. He points out that his employee identification card identifies him as an employee of A.D. Welding and that his immediate supervisor, Alfredo Valdez, the electrician he was assigned to help, was an employee of a leased-labor company named APCI, not Amfels. He also points out that he provided his own work and safety equipment.

In reply to Plaintiff's response to the motion for summary judgment, *Docket No. 16*, Defendant has submitted an affidavit of Ruben Santos who states that he and Guillermo Gomez were Velasco's supervisors and that Mr. Valdez did not have the authority to control Velasco's work or to fire or discipline him. Defendant's summary judgment evidence also points out that Amfels furnished heavy tools, such as grinders, drills, and electrical tools, as well as personal protective wear and safety materials.

### B.  Analysis of the Controlling Law

To determine borrowed-employee status, courts consider nine factors:

(1) Who had control over the employee and the work he was performing, beyond mere suggestion of details or cooperation?
(2) Whose work was being performed?
(3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
(4) Did the employee acquiesce in the new work situation?
(5) Did the original employer terminate his relationship with the employee?
(6) Who furnished tools and place for performance?
(7) Was the new employment over a considerable length of time?
(8) Who had the right to discharge the employee?
(9) Who had the obligation to pay the employee?

*Brown v. Union Oil Co. of California*, 984 F.2d 674, 676 (5th Cir. 1993). No single factor is determinative, although the first factor is considered by some courts to be the central factor. *Id.* Whether a person attains borrowed-employee status is a question of law for the district court to determine. *Id.* at 677. If a factual dispute exists, that dispute must be resolved before the court

can make its legal determination. *Billizon v. Conoco, Inc.*, 993 F.2d 104, 105 (5th Cir. 1993).

The debate over whether Velasco was the borrowed employee of Amfels centers around the first and sixth factors: who had control over Velasco's work and who furnished his tools. With regard to the first factor, Plaintiff seems to argue that because his identification badge identifies him as an employee of A.D. Welding, A.D. Welding had control over the work he was performing. However, there is no indication that A.D. Welding had any say in how Velasco performed his duties at the Amfels shipyard or when it was performed. In fact, the leased labor agreement between A.D. Welding and Amfels specifically states that Amfels retains the right to "Supervise all personnel in the work being performed and controlling the details of the work performed and the manner in which the work will be performed...." *Docket No. 12, Ex. A-1*.

Furthermore, Plaintiff has submitted an affidavit that he was not working under Amfels' supervision because the electrician he was helping, Alfredo Valdez, was the employee of a different leased-labor company. The crux of Plaintiff's argument is that because he was employed as an electrician's helper, the electrician he helped, a non-Amfels employee, was his supervisor. Velasco, however, initially signed an agreement acknowledging that he was under the direction and control of Amfels. Indeed, Defendant has submitted two affidavits stating that Velasco and Mr. Valdez's immediate supervisors, Ruben Santos and Guillermo Gomez, were both Amfels employees. These two individuals told Velasco and Valdez what work to do and directed them to where they were to work on a daily basis. These affidavits are not necessarily inconsistent. While Mr. Valdez, an electrician, may have had some seniority and supervision over Velasco, an electrician's helper, he did not have the authority to control Velasco's work, to decide with whom he worked, to decide on what job he worked, or to fire or discipline him. This

Court is satisfied that Velasco's supervisors were Amfels employees and, therefore, rules that the first factor points in favor of borrowed employee status, and finds any factual differences raised by the summary judgment evidence to be immaterial.

The second, third, and fifth factors, clearly point in favor of borrowed employee status. First, there is no doubt that Velasco was performing work for Amfels, thereby satisfying the second factor. Second, an agreement existed between Amfels and A.D. Welding for the provision of leased labor which states that the leased personnel would be considered borrowed servants of Amfels. This satisfies the third factor. Finally, with regard to the fifth factor, A.D. Welding did not terminate its relationship with Velasco while he worked at the Amfels shipyard as evidenced by his identification badge and the fact that A.D. Welding paid Plaintiff's wages.

The plaintiff seemingly concedes factor four, although he claims he signed an agreement without understanding its contents.[1] Nevertheless, this Court cannot conclude its discussion without noting the importance of the fourth factor in this case. Velasco agreed in writing (twice if one assumes he understood both the English and Spanish versions) that (1) he knew he was assigned to Amfels; (2) he agreed to abide by its rules; (3) he understood he was to operate under their direction and control; (4) he was Amfel's borrowed servant; (5) his sole remedy in the event of injury was the LHWCA; and (6) in the event of injury, Amfels would be considered his employer.[2] Thus, before he ever set foot on Amfels property, he effectively agreed to factors 1,

---

[1] Velasco claims that he did not understand the meaning of the phrase "borrowed servant," which is entirely understandable. However, the same agreement describes the most relevant effect–that is, in the event of an injury, his remedies are limited to the LHWCA and that he cannot sue Amfels, the very issue about which he now complains.

[2] It is important to note that pursuant to this agreement, Velasco has applied for and received benefits pursuant to the LHWCA.

2, 3, 4, and 8 in favor of Amfels. That being the case, he should not now, after having received benefits (a job and then later compensation benefits) based upon this agreement, be heard to argue against it.

With regard to the sixth factor, i.e., who furnished tools and place for performance, there is no doubt that Amfels provided the place for performance since Velasco was at all times assigned to the Amfels shipyard. The Court, therefore, turns to the issue of who furnished the tools.

Velasco argues that he provided much of his own work and safety equipment, such as his hammer, measuring tape, electrical tester, pliers, safety glasses, steel toe boots, long-sleeve work shirts, and safety and welding helmets. Amfels, on the other hand, points out that it furnished heavy tools, such as grinders, drills, and electrical tools, as well as personal protective wear and safety materials.[3] The fact that Plaintiff provided much of his own personal work gear does not indicate that he was not the borrowed employee of Amfels. Had A.D. Welding provided such materials or the heavier equipment, Plaintiff would have a stronger argument. Instead, Amfels provided the heavy machinery used in Velasco's everyday activities. Although Amfels did not specify which types of personal protective wear and safety materials it provided, the fact remains that Amfels provided many of the tools necessary for Velasco to carry out his duties as an employee. Therefore, the Court finds that the sixth factor also favors borrowed employee status.

Case law discussing the seventh factor suggests that employment for a considerable length of time points in favor of borrowed employee status; however, the converse is not true.

---

[3] The leased labor agreement between A.D. Welding and Amfels states that Amfels will provide all tools except those hand tools usually furnished by semi-skilled or skilled personnel.

As noted by the *Brown* court, a relatively short length of service renders the seventh factor neutral. *Brown*, 984 F.2d at 679. Therefore, the fact that Velasco only worked at the shipyard for approximately six months does not indicate either way whether Plaintiff was a borrowed employee.[4]

The final two factors point in favor of borrowed employee status. With regard to the eighth factor, the record indicates that although Amfels did not have the right to terminate Velasco's employment with A.D. Welding, it had the right and did in fact terminate Velasco's employment with Amfels. Finally, the ninth factor points in favor of borrowed employee status because although A.D. Welding paid Velasco, his pay was based on a review of daily time tickets which were supplied to A.D. Welding by Amfels. *Id.* (holding that a similar arrangement supported borrowed employee status).

Overall, this Court finds Amfels' motion to be based upon overwhelming evidence despite the few immaterial contradictions which Velasco raised; however, in light of the work assignment agreement the plaintiff signed, to allow him to now renege on this agreement would be the equivalent of allowing a party to file an affidavit contrary to his own prior testimony. *See, e.g., S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 496 (5th Cir. 1996). Plaintiff received a job and LHWCA benefits based upon his consent to the terms of the agreement and should not now be heard to contradict his own prior agreement.

### III. CONCLUSION

Having reviewed the arguments of counsel, the relevant case law, and all other documents on file, the Court is of the opinion that summary judgment is appropriate in this case. The vast

---

[4] The neutrality of the seventh factor is insufficient to render summary judgment inappropriate in this case. *See Billizon*, 993 F.2d at 106.

majority of the relevant factors clearly point towards the fact that at the time Plaintiff was injured, he was the borrowed employee of Amfels. Those that do not are, at best, neutral. Additionally, prior to the accident, Plaintiff agreed in writing that he was a borrowed servant. That being the case, and for the foregoing reasons, Defendant's Motion for Summary Judgment, *Docket No. 12*, is hereby **GRANTED**. All other pending motions are hereby **DENIED as moot**.

Signed in Brownsville, Texas this 15th day of April, 2005.

Andrew S. Hanen
United States District Judge